IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRACI E. UNDERWOOD,

        Plaintiff,               No. CIV S-06-0007 PAN (JFM)

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.            ORDER

_____/

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge). Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny Plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I.  Factual and Procedural Background

        In a decision dated June 16, 2005, the ALJ determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  The ALJ found Plaintiff has the severe impairment of bipolar disorder versus depression, but that this impairment does not meet or medically equal a listed impairment; Plaintiff's allegations regarding the limits of her impairment are not totally credible; Plaintiff has no exertional impairments; Plaintiff has no impairment in her ability to understand, remember and carry out simple instructions, slight impairment in understanding, remembering, and carrying out detailed instructions, slight impairment in making judgments,

---

        [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

                Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
                Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
                Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
                Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
                Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   slight impairment interacting appropriately with supervisors and coworkers, and moderate

2   impairment interacting with the public and responding to work pressure and change; Plaintiff is

3   able to do simple, repetitive tasks consistent with unskilled work; there exists a significant

4   number of jobs in the national economy that Plaintiff can perform; and Plaintiff is not disabled.

5   Administrative Transcript ("AT") 35.

6          Plaintiff contends that the ALJ committed numerous errors.  First, Plaintiff argues

7   that the ALJ failed to evaluate whether Plaintiff's mental impairments met or equaled the criteria

8   in the regulations for disability.  Second, Plaintiff states that the ALJ did not provide specific and

9   legitimate reasons for discrediting the opinions of Plaintiff's treating physicians.  Third, Plaintiff

10  contends that the ALJ failed to properly credit the testimony of Plaintiff's lay witness.  Fourth,

11  Plaintiff argues that the ALJ failed to assess the impact of Plaintiff's symptoms on her ability to

12  work.  Finally, Plaintiff states that the ALJ's failure to include all relevant limitations in the

13  hypothetical question posed to the vocational expert was in error.

14  II.  Standard of Review

15          The court reviews the Commissioner's decision to determine whether (1) it is

16  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

17  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

18  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

19  Substantial evidence means more than a mere scintilla of evidence, but less than a

20  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

21  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402

23  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

24  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

25  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

26  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

1   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

2   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

3   substantial evidence supports the administrative findings, or if there is conflicting evidence

4   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

5   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

6   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

7   1335, 1338 (9th Cir. 1988).

8   III.  Analysis

9       a.  The ALJ's Evaluation of Plaintiff's Mental Impairment Under the Listings in the

10  Regulations Was Proper.

11          The ALJ is obligated to follow the sequential evaluation process in determining

12  Plaintiff's qualification for benefits.  See supra note 1.  At step three of the process, the ALJ

13  found that Plaintiff did not meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P,

14  App.1.  AT 31, 34.  This finding was not in error.

15          The ALJ found that Plaintiff suffered from the severe impairment of bipolar

16  disorder versus depression.  AT 31, 34.  However, according to the ALJ, this impairment was not

17  severe enough to meet the de facto disability criteria at Listing 12.04 of 20 C.F.R., Pt. 404,

18  Subpt. P, App.1.  The ALJ based this finding upon his analysis and weighing of the medical

19  evidence.

20          Plaintiff contends she meets the requirements for Listing 12.04 (Affective

21  Disorders).  The Social Security Regulations "Listing of Impairments" is comprised of

22  impairments to fourteen categories of bodily systems and/or diseases severe enough to preclude a

23  person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990);

24  20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe as to be

25  irrebuttably presumed disabling.  20 C.F.R. § 416.920(d).  In meeting or equaling a listing, all of

26  the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

4

1  1985).  Under Listing 12.04, a plaintiff is presumptively disabled if they meet the requirements of

2  both of the listed categories.  20 C.F.R. Part 404, Subpt. P, App.1, §12.04.[2]  If a claimant's

3  impairment or combination of impairments meets or exceeds a listing, no specific finding is

4

_____

[2]The relevant portion of Listing 12.04 is as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.  The required level of severity for these disorders is met when the requirements in both A and B are satisfied[.]

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; [or]

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); [and]

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

1  necessary as to the claimant's ability to perform his or her past relevant work or any other jobs.

2  20 C.F.R. § 404.1520(d).

3        The ALJ gave great weight to the opinion of State Agency doctors who concluded

4  that Plaintiff did not meet the regulatory requirements for a finding of disability at step three.

5  The State Agency opined that Plaintiff's depression was characterized by only two of the

6  required four symptoms in subpart A of Listing 12.04.  AT 246.  The State Agency found no

7  manifestations of Plaintiff's manic symptoms in subpart B of the listing.  Id.  Furthermore, the

8  State Agency did not find any marked limitation in any of the B criteria, such as restrictions of

9  daily living, social functioning, and maintenance of concentration, persistence, and pace.  AT

10  253.  As discussed in detail below, the ALJ's weighing of the State Agency opinion was not in

11  error.

12        The opinion of the non-examining doctors with the State Agency may serve as

13  substantial evidence when that opinion is supported by independent clinical findings or other

14  evidence in the record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  The evidence in

15  the record supports the State Agency conclusion that Plaintiff does not meet the listing criteria.

16  Despite her long history of mental illness, Plaintiff has provided little evidence of continuous

17  manifestation of symptoms required in subpart A.  While Plaintiff describes frequent

18  hospitalizations, the ALJ correctly noted that there are few medical records to support such a

19  conclusion.  AT 28, 30.  Furthermore, the notes from each of Plaintiff's treating doctors, as well

20  as the examining physician, show Plaintiff to be alert, coherent, cooperative, and stable.  AT 263-

21  67, 274-75, 277, 306-08.

22        As it concerns subpart B, the sole indication that Plaintiff suffers from mania

23  comes from Dr. Zoglio, one of Plaintiff's treating physicians, in the form of a diagnosis of manic

24  depression.  AT 312, 317.  The ALJ provided specific and legitimate reasons for not relying upon

25  Dr. Zoglio's opinion.  The ALJ's conclusion that Plaintiff did not meet the criteria for Listing

26  12.04 was not in error.

1       b.  <u>The ALJ's Weighing of the Medical Evidence Was Not in Error.</u>

2          The ALJ rejected the medical opinions of Plaintiff's treating physicians as they

3 conflicted with the medical evidence in the record.  This finding was not in error.  Substantial

4 evidence supports the specific and legitimate reasons provided by the ALJ for discrediting the

5 treating physicians' opinions.

6          The weight given to medical opinions depends in part on whether they are

7 proffered by treating, examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821,

8 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

9 who has a greater opportunity to know and observe the patient as an individual.  <u>Id</u>.; <u>Smolen v.</u>

10 <u>Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

11          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

12 considering its source, the court considers whether (1) contradictory opinions are in the record;

13 and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

14 treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u>, 81

15 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

16 rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  <u>Lester</u>,

17 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

18 it is contradicted by a supported examining professional's opinion (e.g., supported by different

19 independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d

20 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In

21 any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

22 findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

23 minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a

24 non-examining professional, without other evidence, is insufficient to reject the opinion of a

25 treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

26 /////

1    Dr. Cohen treated Plaintiff.  On January 6, 2004, Dr. Cohen completed a

2  functional assessment of Plaintiff's ability to perform work related activities.  AT 289-91.  Dr.

3  Cohen rated Plaintiff's ability to make occupational and performance adjustments fair to poor.

4  AT 289, 290.  In addition, he found that Plaintiff's ability to make personal and social

5  adjustments fair to poor, with the exception of her ability to maintain personal appearance, which

6  he stated was good.  AT 290.  Dr. Cohen based his opinion upon the fact that Plaintiff had been

7  hospitalized six times in the year prior to his assessment.  AT 291.

8    Dr. Cohen gave a second opinion on May 24, 2004.  AT 309-311.  Citing

9  Plaintiff's record of hospitalization as the basis for his findings, Dr. Cohen repeated his

10  assessment of Plaintiff's fair to poor ability to make occupational and performance adjustments.

11  AT 309.  In addition, in this later opinion, Dr. Cohen downgraded Plaintiff's ability to make

12  personal and social adjustments, stating that she was fair to poor in all categories.  AT 310.

13    Dr. Zoglio also treated Plaintiff starting on December 16, 2002.  AT 312.  On

14  September 7, 2004, Dr. Zoglio opined that Plaintiff suffered from bipolar disorder, noting that

15  her response to treatment and medication had been fair.  Id.  Dr. Zoglio determined that

16  Plaintiff's ability to make occupational, performance, and personal adjustments were all fair to

17  poor.  AT 313-14.

18    On May 4, 2005, Dr. Zoglio issued a second opinion.  AT 317-20.  Dr. Zoglio

19  repeated his diagnosis of bipolar disorder.  AT 317.  In addition, Dr. Zoglio stated that Plaintiff's

20  ability to make occupational, performance, and personal adjustments remained fair to poor.  AT

21  3198-19.  The sole change in Dr. Zoglio's second opinion was to upgrade Plaintiff's ability to

22  maintain her personal appearance from fair to good.  AT 319.

23    The ALJ discounted the multiple opinions from Dr. Cohen and Dr. Zoglio.  AT

24  32.  The ALJ discounted these opinions because of their inconsistency with the concurrent

25  treating notes and medical record.  Id..  Medical opinions that are not supported by clinical

26  findings need not be accepted by the ALJ.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

8

1   2002).  According to the ALJ, Plaintiff's response to medication and her statements to physicians

2   upon evaluation that she was not depressed, had no suicidal ideation, no hallucinations, or

3   delusions, undermined Dr. Cohen's opinion about the significant limitations in Plaintiff's

4   abilities.  AT 32.  Furthermore, the ALJ described the treatment notes of Dr. Zoglio that showed

5   primarily normal findings in Plaintiff.  Id.  The ALJ's conclusions were not in error.

6           There is little evidence in Dr. Cohen's notes to support his functional assessment

7   of Plaintiff's abilities.  See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)(upholding

8   rejection of treating physician's opinion that "is not supported by [] his own notes"); Tonapetyan

9   v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Medical records from Dr. Cohen and his

10  colleagues documenting Plaintiff's treatment around the time of Dr. Cohen's opinions show a

11  consistent prescription medication plan indicative of successful treatment.  AT 271, 272, 273,

12  275, 277.  The success of this plan is reinforced by the fact that Dr. Cohen repeatedly described

13  Plaintiff as "coherent," "appropriate," "alert," "well-oriented."  AT 274, 275, 277.

14          The ALJ noted that the medical record demonstrates a long history of mental

15  illness.  Id.  However, the ALJ properly found that Plaintiff functions relatively well with her

16  medications and treatment and that Dr. Cohen' s assessment was not supported by the evidence

17  in the record.  "Impairments that can be controlled effectively with medication are not disabling

18  for the purposes of determining eligibility."  Warre v. Commissioner of Social Sec. Admin., 439

19  F.3d 1001, 1006 (9th Cir. 2006); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.

20  1983)(affirming a denial of benefits and noting that the claimant's impairments were responsive

21  to medication).  Indeed, as noted above, the medical records from Plaintiff's treating physicians

22  document few impairments not controlled by medication that significantly limited Plaintiff's

23  ability to function.

24          In spite of the apparent success of his treatment regimen, Dr. Cohen changed his

25  opinion about Plaintiff's ability to maintain a normal appearance.  However, there are no reports

26  that Plaintiff's appearance changed between Dr. Cohen's initial opinion and his later opinion.

1  Treatment notes from the period between the two opinions show no indication that Plaintiff's

2  ability to groom herself changed.  Indeed, Dr. Cohen's own notes from March 16, 2004, show

3  Plaintiff was casually dressed and groomed.  AT 274.  His treatment notes from May 24, 2004,

4  stated that Plaintiff displayed no symptoms.  AT 272.  Nothing in the record supports Dr.

5  Cohen's conclusion that there was a change in Plaintiff's abilities between the two assessments.

6            Furthermore, Dr. Cohen stated that Plaintiff had been hospitalized repeatedly.

7  Upon that basis he made his assessment of Plaintiff's functional capacity.  AT 291, 309.

8  However, despite efforts from the ALJ to secure all of the relevant medical records in this case,

9  there is no evidence to support any conclusion that Plaintiff was hospitalized six and seven times.

10  Substantial evidence supports the ALJ's conclusion that Dr. Cohen's opinion was overly

11  restrictive.

12            Dr. Zoglio's treatment notes also provide little objective evidence to support his

13  restrictive opinion.  Dr. Zoglio reported that Plaintiff was alert and stable, and that her speech

14  was clear.  AT 306, 307.  He noted that her energy had increased, and that there was no evidence

15  of depression.  AT 308.  The ALJ properly concluded that the medical record contained few

16  objective notes to support Dr. Zoglio's conclusions.  Id.

17            Other treatment records and medical opinions support the ALJ's conclusions

18  about the relative severity of Plaintiff's impairment and the weight that should be given to the

19  restrictive assessments of Plaintiff's treating physicians.  A mental health advisor working in Dr.

20  Cohen's and Dr. Zoglio's office at Human Resources Consultants found Plaintiff to be

21  cooperative, calm, alert, attentive, of a normal mood, logical, thinking appropriately, clear, and

22  coherent during an evaluation on November 8, 2003.  AT 282.  A second evaluation on October

23  11, 2004, repeated these normal findings.  AT 304.

24            Dr. Regazzi examined Plaintiff of May 21, 2004.  AT 263-67.  Dr. Regazzi, a

25  psychologist, found Plaintiff to suffer from a depressive disorder and assigned to her a Global

26

1    Assessment of Functioning (GAF) score of 60.[3]  AT 266.  Similar to Dr. Cohen and Dr. Zoglio,

2    Dr. Regazzi found that Plaintiff would have moderate difficulty adapting to the basic demands of

3    most work environments.  AT 267.  In contrast, however, Dr. Regazzi opined that there were no

4    impairments in Plaintiff's social functioning, and that Plaintiff was able to understand and carry

5    out simple instructions.  Id.

6         The State Agency reviewed Plaintiff's medical records on September 10, 2003.

7    AT 243-60.  The State Agency found Plaintiff suffering from depression, with only a mild

8    restriction in daily living, but moderate limitations in social functioning and maintaining

9    concentration, persistence, and pace.  AT 253.  These limitations moderately limited Plaintiff's

10   ability to understand, remember, and carry out detailed instructions, maintain attention for

11   extended periods of time, complete a normal workweek without interruption, interact

12   appropriately with the general public, respond to changes in the work setting, travel, or set

13   unrealistic goals.  AT 257-58.

14        The ALJ gave the "greatest weight" to the opinions of Dr. Regazzi and the State

15   Agency.  AT 32.  As described by the ALJ, the opinion of the examining psychologist and State

16   Agency doctor is most consistent with the medical evidence in the record.  Substantial evidence

17   supports this conclusion.

18        The ALJ properly evaluated the medical evidence in the record.  Specific and

19   legitimate reason support the ALJ's rejection of the opinions of Plaintiff's treating physician.

20   Each of the opinions from Plaintiff's treating physician is overly restrictive, neither supported by

21   the doctors' own treatment notes or the other medical evidence in the record.  The ALJ's findings

22   will not be disturbed.

23   _____

24        [3]GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms
     (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in
26   social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.) Id.

1     c.  The ALJ's Evaluation of Plaintiff's and the Lay Witness' Testimony Was in Error.

2          The ALJ evaluated consistent testimony from Plaintiff and her husband.   The

3   ALJ rejected both witnesses, finding that Plaintiff's testimony was not supported by the evidence

4   of her daily activities, nor by the medical evidence of her treatment.  This finding about

5   Plaintiff's credibility was not in error.

6          The ALJ determines whether a disability applicant is credible, and the court defers

7   to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

8   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

9   an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad

10  v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

11  supported by "a specific, cogent reason for the disbelief").

12          In evaluating whether subjective complaints are credible, the ALJ should first

13  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

14  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

15  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

16  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

17  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

18  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

19  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

20  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

21  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

22  and effect of symptoms, and inconsistencies between testimony and conduct also may be

23  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

24  to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

25  the ALJ in determining whether the alleged associated pain is not a significant nonexertional

26  impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ

1    may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

2    1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

3    F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is

4    malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear

5    and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

6    1999).

7           Plaintiff testified that her ability to perform most daily activities had been severely

8    compromised as a result of her illness.  Plaintiff stated that she had not been camping, hunting, or

9    fishing in nearly seven years, nor had she eaten out in a restaurant in the six months prior to the

10   administrative hearing.  AT 352.  In addition, Plaintiff reported that her ability to concentrate was

11   limited to 30 minute periods.  AT 355.  Furthermore, Plaintiff testified to abnormal sleep

12   patterns, sleeping late into the morning and requiring naps during the day.  AT 352-53.

13          The ALJ noted that Plaintiff testified to performing numerous daily activities,

14   including housework, playing computer games, playing cards, reading, walking, and swimming.

15   AT 32.  In addition, the ALJ properly described Plaintiff's statements about her ability to care for

16   herself and others.  Plaintiff's ability to engage in some daily activities does not compromise her

17   subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);

18   Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th

19   Cir.1989) (holding that one need not be "utterly incapacitated" in order to be disabled).

20   However, the ALJ found that Plaintiff spent a substantial part of his day performing activities

21   consistent with those necessary for simple, repetitive tasks or unskilled work.  AT 32; see

22   Morgan, 169 F.3d at 600 (finding plaintiff's ability to fix meals, do laundry and yard work, and

23   occasionally care for a friend's child sufficient to undermine complaints of pain).  Plaintiff's

24   ability to perform daily activities that mirror those she might perform in the workplace is a

25   specific and legitimate reason to discredit her subjective complaints of disability.

26   /////

1    Furthermore, the ALJ noted that Plaintiff's complaints were inconsistent with her

2    treatment regimen.  AT 32.  Plaintiff responded well to medication.  As noted above, conditions

3    that can be controlled through medication are generally not considered disabling.  Warre, 439

4    F.3d at 1006; Odle, 707 F.2d at 440.

5    Furthermore, the ALJ properly noted that Plaintiff's treating records indicated a

6    level of functioning well above that complained about by Plaintiff.  AT 32.  As described in

7    detail above, Plaintiff's doctors consistently reported her to be "coherent," "appropriate," "alert,"

8    "well-oriented," and "stable."  AT 274-75, 277, 306-07.  Plaintiff statements that her condition

9    has deteriorated is hardly consistent with this proposition.  AT 356.  Faced with this medical

10   evidence, the ALJ properly discounted Plaintiff's inconsistent subjective complaints.  See

11   Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)(holding that the ALJ may engage in

12   ordinary techniques of evaluating credibility, including claimant's reputations for truthfulness

13   and inconsistencies in claimant's testimony).

14   As it concerned the lay witness testimony from Plaintiff's husband, the ALJ noted

15   that it did not support a finding of disability.  The sole basis for the ALJ conclusion was that

16   Plaintiff's husband's testimony was consistent with the discredited testimony of Plaintiff.  This

17   finding was in error.

18   "[L]ay witness testimony as to a claimant's symptoms or how an impairment

19   affects ability to work is competent evidence, and therefore cannot be disregarded without

20   comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala,

21   12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a

22   plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ

23   wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

24   each witness."  Dodrill, 12 F.3d at 919.

25   The ALJ noted that Plaintiff's husband provided testimony that was consistent

26   with that given by Plaintiff.  As explained above, the ALJ properly discredited this testimony

14

1   because it did not support a finding of disability.  However, the mere fact that Plaintiff's

2   allegations are discredited is not a germane reason for rejecting the testimony of a lay witness.  Id.

3           Lay witness testimony is valued because the third party has an opportunity to

4   observe Plaintiff's symptoms.  See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  As

5   a result, the ALJ's reasons for discrediting the lay witness must be directed toward the witness,

6   not the Plaintiff.  See e.g. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)(holding

7   "[i]nconsistency with the medical evidence" a proper basis for discrediting lay witness

8   testimony); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)(finding a lack of objectivity by lay

9   witness involved in presenting disability claim to be a germane reason to discredit that

10   testimony).  The ALJ's failure to provide any germane reason specifically directed at the

11   testimony of the lay witness was error.

12           However, there is no indication that the ALJ, had he considered Plaintiff's

13   husband's testimony, would have reached a different conclusion.  As a result, the ALJ's error

14   must be considered harmless.  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050,

15   1056 (9th Cir. 2006); see also  Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990)(harmless

16   error analysis applicable in judicial review of social security cases).  The ALJ properly noted that

17   Plaintiff's husband's testimony does not present any facts or allegations not made in Plaintiff's

18   testimony.  AT 32.  Given the clear and convincing reasons given by the ALJ for discrediting

19   Plaintiff's testimony, including its inconsistency with the medical evidence, there is nothing in

20   the record to support any conclusion that consideration of Plaintiff's husband's testimony could

21   have led to a finding that Plaintiff was disabled.   See Vincent v. Heckler, 739 F.2d 1393, 1395

22   (9th Cir. 1984)(holding that harmless error applied after ALJ failed to discuss claimant's son's

23   testimony because decision was supported by substantial medical evidence); see also Young v.

24   Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)(holding that "although specific articulation of

25   credibility findings is preferable, we consider the lack thereof to constitute a deficiency in

26   opinion-writing that does not require reversal" when the ultimate findings are supported by

1  substantial evidence in the record).  Any error in this case must be considered harmless.

2          d.  <u>The ALJ Properly Assessed the Impact of Plaintiff's Symptoms.</u>

3          The ALJ found Plaintiff capable of performing simple, repetitive tasks consistent

4  with unskilled work at any exertional level.  AT 34-35.  In reaching this conclusion, the ALJ

5  considered each of Plaintiff's impairments and the impact those impairments have upon

6  Plaintiff's ability to perform in a job setting.  This finding was not in error.

7          Plaintiff argues that the ALJ erred in his assessment of Plaintiff's residual

8  functional capacity.  Plaintiff states that the ALJ failed to consider Plaintiff's impaired ability to

9  interact with coworkers, supervisors, or the public, as well as Plaintiff's inability to deal with

10  stress.  (Pl.'s Mot. Summ. J 25:23-26.)  The Commissioner offers no argument in response.

11  Accordingly, this issue is deemed waived.  <u>See</u> <u>Smith v. Marsh</u>, 194 F.3d 1045, 1052 (9th Cir.

12  1999)("on appeal, arguments not raised by a party in its opening brief are deemed waived");

13  <u>Brookfield Communications, Inc. V. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1046 n.7

14  (9th Cir. 1999).  In spite of this fact, remand is not required as any error committed by the ALJ

15  was harmless.  There is absolutely nothing in the record to support any conclusion that remand to

16  consider the limitations put forth by Plaintiff would result in a different outcome.  <u>See</u> <u>Stout</u>, 454

17  F.3d at 1056.  Indeed, the ALJ did in fact expressly consider each of the areas noted by Plaintiff,

18  including all of them in his finding that Plaintiff was able to perform simple, repetitive tasks

19  similar to unskilled work.  AT 34-35.

20          Social Security Ruling 96-8p sets forth the policy interpretation of the

21  Commissioner for assessing residual functional capacity.  SSR 96-8p.  Residual functional

22  capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R.

23  §§ 404.1545(a), 416.945(a) (2003); <u>see</u> <u>also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir.

24  1985) (residual functional capacity reflects current "physical and mental capabilities").  The ALJ

25  found Plaintiff able to perform simple, repetitive tasks consistent with unskilled work.  AT 34-

26  35.  Substantial evidence supports the ALJ's conclusion.

1    In making this finding about Plaintiff's residual functional capacity, the ALJ

2  recognized Plaintiff's slightly impaired ability to understand and carry out detailed instructions,

3  make judgments, and interact appropriately with supervisors and coworkers.  AT 34.

4  Furthermore, the ALJ also noted that Plaintiff was moderately impaired in her ability to interact

5  with the public.  Id.  The ALJ's limitation to unskilled work properly captures these impairments.

6    Unskilled work is work that needs little or no judgment to perform simple duties

7  and can generally be learned on the job in 30 days or less.  20 C.F.R. § 404.1568(a).  Unskilled

8  work does not require working with people.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules

9  201.00(I), 202.00(g); SSR 85-15.  Unskilled work specifically excludes the ability to perform

10 detailed and complex assignments, exercise judgment, and appropriately interact, skills not

11 possessed by Plaintiff.

12   The ALJ also found Plaintiff moderately impaired in her ability to respond to

13 changes in the work setting.  AT 35.  Unlike many of Plaintiff's other limitations, unskilled work

14 expressly requires an ability to deal with changes in the routine work setting.  SSR 85-15.  In

15 spite of this fact, the ALJ concluded that Plaintiff could still perform unskilled work.  AT 468,

16 469.  This finding was not in error.

17   A preclusion from unskilled work only occurs when there is a substantial loss of

18 Plaintiff's ability to respond to changes in the work setting.  SSR 85-15.  Given the medical

19 evidence upon which the ALJ relied, as well as the other evidence of Plaintiff's daily activities

20 that are consistent with many aspects of unskilled work, the ALJ's determination that a moderate

21 impairment did not equal a substantial loss in ability was not in error.  The regulations do not

22 define the parameters of moderate and substantial.  The ALJ described moderate impairment as

23 "moderate limitations...but able to function satisfactorily."  AT 358.  While a different

24 interpretation is possible, where the ALJ's interpretation of the evidence is reasonable, it is not

25 the Court's province to second guess it.  Fair, 885 F.2d at 604.  The ALJ's interpretation is

26 eminently reasonable given that a moderate evaluation lies in the middle of the spectrum of

1  choice available to State Agency doctors who evaluated Plaintiff's impairments, greater than "not

2  significantly limited," but less than "markedly limited."  AT 258.  It is not unreasonable to

3  interpret this middle ground of impairment as something less than a substantial loss in ability.

4  The ALJ's conclusion that Plaintiff's can perform all the essential components of unskilled work

5  is not in error.

6  Waiver by the Commissioner creates harmless error in this case.  The ALJ

7  expressly included each of Plaintiff's impairments in his assessment of Plaintiff's residual

8  functional capacity.  The preclusion to unskilled work accurately captures each of these

9  limitations.  There is nothing to indicate a contrary outcome would result upon remand because

10  the ALJ did in fact consider all of the relevant impairments upon his initial evaluation.  The

11  ALJ's finding will not be disturbed.

12  e.  The ALJ Relied Upon a Hypothetical that Included All of Plaintiff's Relevant

13  Limitations.

14  The ALJ found Plaintiff able to perform work that exists in significant numbers in

15  the national economy.  Prior to reaching this conclusion, the ALJ elicited testimony from a

16  vocational expert.  The ALJ's utilization of the testimony of this vocational expert was not in

17  error.

18  Hypothetical questions posed to a vocational expert must set out all the

19  substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

20  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

21  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

22  has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

23  ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

24  of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

25  must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

26  418, 422-23 (9th Cir. 1988).

18

1    Prior to reaching his conclusions about Plaintiff's ability to work, the ALJ posed a

2    hypothetical encompassing someone of Plaintiff's age, education, and previous work history,

3    who possessed the same residual functional capacity as Plaintiff.  AT 357-58.  In response, the

4    vocational expert noted that numerous jobs remained in the national economy, including

5    shipping and receiving clerk, auto detailer, janitor, mail room clerk, hotel maid, and can-filling

6    machine operator.  AT 358-59.  The ALJ's hypothetical accurately captured all of Plaintiff's

7    limitations.  As discussed previously, the ALJ properly weighed and evaluated the medical and

8    other evidence in the record prior to determining Plaintiff's residual functional capacity.  This

9    assessment accurately captured Plaintiff's limitations.  The hypothetical posed to the vocational

10   expert by the ALJ was proper.

11    The ALJ's decision is fully supported by substantial evidence in the record and

12   based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

13    1.  Plaintiff's motion for summary judgment or remand is denied, and

14    2.  The Commissioner's cross-motion for summary judgment is granted.

15   DATED:  November 29, 2006.

16

17                                         UNITED STATES MAGISTRATE JUDGE

18

19   13
     Underwood.0007.wpd
20

21

22

23

24

25

26